RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 9/27/11

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| ROBERT CAYTON, <br>     Plaintiff <br><br> VERSUS <br><br> WINNFIELD CORRECTIONAL <br> CENTER, et al., <br>     Defendant | CIVIL ACTION <br> SECTION "P" <br> NO. CV10-0824-A <br><br><br> JUDGE DEE D. DRELL <br> MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a verified civil rights complaint filed pursuant to 28 U.S.C. § 1983, in forma pauperis, by pro se petitioner Robert Cayton ("Cayton") on May 7, 2010, and amended on August 9, 2010 (Doc. 5). The named defendants are Timothy Wilkinson (warden of the Winn Correctional Center ("WCC") in Winnfield, Louisiana), Kathy Richardson (nursing supervisor at WCC), Dr. Pacheco (a physician formerly employed at WCC), Chief Lucas (chief of security at WCC), and Assistant Chief of Security Glover.

Cayton contends that, when he was imprisoned at WCC in October 2009, he was attacked by another inmate with a lock and knocked unconscious when he fell and hit a dormitory locker. Cayton contends he laid on the floor unconscious for about three minutes before other inmates began yelling "man down" to alert security. Cayton alleges he had severe head trauma which required emergency

surgery and he now has a metal plate in his head. Cayton complains there was not any security, in the dormitory (Birch, C-1) or watching the dormitory, to prevent the attack and his life was threatened when he got out of the hospital. Although the warden assured Cayton the "matter" would be handled, Cayton contends it has not been. Cayton further alleges he has not received adequate medical care or medication because he still suffers from severe headaches and he has vision loss, nose bleeds, fainting spells, and numbness down his left side. For relief, Cayton asks for monetary damages.

Defendants answered the complaint (Docs. 8, 10) and filed a motion for summary judgment (Doc. 18), to which Cayton responded (Doc. 20). Defendants' motion is now before the court for disposition.

## Law and Analysis

### Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the

2

motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material". A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. Herrera v. Millsap,

862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82(1992).

Administrative Remedy Procedure

First, defendants contend Cayton failed to properly exhaust his administrative remedies because the warden rejected Cayton's ARP as untimely.

The Louisiana Administrative Code at Title 22 (Corrections, Criminal Justice and Law Enforcement), Part I (Corrections), Section 325, (Adult Administrative Remedy Procedures), provides in pertinent part:

> A. Administrative Remedy Procedure
>
> 1. On September 18, 1985, the Department of Public Safety and Corrections installed in all of its adult institution a formal grievance mechanism for use by all inmates committed to the custody of the Department. The process bears the name Administrative Remedy Procedure (ARP). Inmates are required to use the procedure before they can proceed with a suit in Federal and State Courts.
>
> 2. Inmates are encouraged to continue to seek solutions to their concerns through informal means, but in order to insure their right to use the formal procedure, they should make their request to the warden in writing within a 90 day period after an incident has occurred. If, after filing in the formal procedure an inmate receives a satisfactory response through informal means, the inmate may request (in writing) that the warden cancel his formal request for an administrative remedy.
>                 \*          \*          \*
>
> B. Purpose. Corrections Services has established the Administrative Remedy Procedure through which an inmate

may seek formal review of a complaint which relates to any aspect of his incarceration if less formal methods have not resolved the matter. Such complaints and grievances include, but are not limited to any and all claims seeking monetary, injunctive, declaratory, or any other form of relief authorized by law and by way of illustration includes actions pertaining to conditions of confinement, personal injuries, medical malpractice, time computations, even though urged as a writ of habeas corpus, or challenges to rules, regulations, policies, or statutes. Through this procedure, inmates shall receive reasonable responses and where appropriate, meaningful remedies.

\*     \*     \*

F. Procedure

2. Initiation of Process. Inmates should always try to resolve their problems within the institution informally, before initiating the formal process. This informal resolution may be accomplished through discussions with staff members, etc. If the inmate is unable to resolve his problems or obtain relief in this fashion, he may initiate the formal process.

a. The method by which this process is initiated is by a letter from the inmate to the warden. For purposes of this process, a letter is:

i. any form of written communication which contains this phrase: "This is a request for administrative remedy;" or

ii. Form ARP-1 at those institutions that wish to furnish forms for commencement of this process.

b. No request for administrative remedy shall be denied acceptance into the Administrative Remedy Procedure because it is or is not on a form; however, no letter as set forth above shall be accepted into the process unless it contains the phrase: "This is a request for administrative remedy."

Cayton's ARP complained of an ongoing lack of medical care

following his surgery after the October 28, 2009 incident.[1] The Warden's designee rejected the ARP as untimely because it was filed over ninety days after the October 29, 2009 incident. However, since Cayton was not complaining about the incident, but instead about the subsequent, ongoing lack of medical care, the Warden obviously erred in rejecting the ARP as untimely. Cayton did not file his grievance late.

Defendants further point out that Cayton failed to exhaust his administrative remedies by not filing a second-step ARP with the Louisiana Department of Public Safety and Corrections. In response, Cayton contends he was precluded from appealing his first-step ARP because it was "rejected" by the warden, so there was not "response" from which he could appeal.

Cayton misunderstands the law in this regard. A prisoner may file a second step ARP (or "appeal") with the Louisiana Department of Public Safety and Corrections after a warden either rejects or responds to a first-step ARP-either one constitutes a "response" from the warden for purposes of the statute. See 22 La. A.D.C. Pt.

---

[1] In his complaint, Cayton contends that, after he was released from the hospital following surgery, he was rushed back to the hospital due to post-surgery complications in about November. Cayton further contends that, since then, he has complained of headaches, nose bleeds, vision loss, and left side numbness, but has not been provided any further medical care. Cayton alleges that the hospital prescribed pain medication, but Pat Thomas instructed the staff not to give it to him because it was too expensive; instead, he was given Motrin. Cayton further alleges he was prescribed physical therapy by the LSUMC phsycian, but he has not been provided that, either.

1, § 325. Therefore, the defendants are correct in their assertion that Cayton failed to exhaust his administrative remedies.

However, since defendants were incorrect in dismissing Cayton's grievance as untimely, Cayton may re-file his first-step grievance (if he believes he is still being denied adequate medical care) and then proceed to step 2 of the grievance procedure before filing another complaint in the district court.

Since Cayton failed to exhaust his administrative remedies, his complaint should be dismissed without prejudice.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion for summary judgment (Doc. 18) be DENIED and that Cayton's complaint be DISMISSED WITHOUT PREJUDICE for failure to exhaust his administrative remedies.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 26th day of September, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE